UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE NO. 05-11761-RCL

ROBERT DOWNER and
NANCY DOWNER,

       Plaintiff,

v.

TOWN OF BURLINGTON, ROBERT
MERCIER, individually and in his capacity as
Town Manager, FRANCIS HART,
individually and in his capacity as Chief of
Police, and HARRY SAWYER,

       Defendants.

MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COMPLAINT

## I.    STATEMENT OF FACTS[1]

The Plaintiff, Robert Downer (hereinafter, "Downer") is an individual who in 1985

commenced employment with the Town as a full-time police officer. Complaint, ¶ 1. In 1996,

Downer was promoted to the rank of Sergeant. Complaint, ¶ 7. In early 2000, Sawyer filed a

formal complaint with the Town's Police Chief, requesting that the Town conduct an

investigation into comments of a sexual nature that Downer made about Sawyer. Complaint, ¶

17. In August 2001, after conducting an extensive investigation and multiple days of hearing,

the Town, through Mercier, demoted Downer to the position of patrol officer for a host of rules

violations. Complaint, ¶ 37. Downer appealed the Town's discipline to the Massachusetts Civil

Service Commission (hereinafter, "the Commission"). Complaint, ¶ 38. After many days of

---

[1] The facts recited herein are taken from the averments in the Complaint, and are accepted as true for the
purposes of this motion only. See Coyne v. Somerville, 972 F.2d 440, 442-443 (1st Cir. 1992).

hearing and receipt of briefs from both Downer and the Town, the Commission overturned the

Town's disciplinary sanction. Complaint, ¶ 40. Downer filed the instant action on August 24,

2005, alleging that the Defendants violated Downer's First Amendment rights, in contravention

of G.L. c. 12, §11I and 42 U.S.C, § 1982. Complaint, ¶¶ 61, 63. Downer further alleges that the

Defendants interfered with his contract of employment, intentionally inflicted emotional distress

upon him, conspired against him, defamed he and his wife, and caused his wife a loss of

consortium.

## II.    ARGUMENT

### A.    MOTION TO DISMISS STANDARD

Under Fed.R.Civ.P. 12(b)(6), a complaint must be dismissed if it fails to state a claim

upon which relief may be granted against the Defendants. A plaintiff must set forth "'factual

allegations, either direct or inferential, respecting each material element necessary to sustain

recovery under some actionable legal theory.'" Roth v. United States, 952 F.2d 611, 613 (1st Cir.

1991) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)). The plaintiff

cannot rely upon "subjective characterizations or unsubstantiated conclusions." Fleming v. Lind-

Waldock & Co., 922 F.2d 20, 23 (1st Cir.1990).

### B.    ANY CLAIMS UNDER G.L. c. 12, § 11I AGAINST THE DEFENDANTS RELYING ON EVENTS OCCURRING PRIOR TO AUGUST 24, 2002, ARE BARRED BY THE STATUTE OF LIMITATIONS

The statute of limitations governing civil rights claims requires that the action be

commenced within the three (3) years following the date when the cause of action accrues. See

G.L. c. 260, § 2A. G.L. c. 260, § 2A provides in relevant part as follows:

> "Except as otherwise provided, actions of tort…to recover for
> personal injuries…shall be commenced only within three (3) years
> next after the cause of action accrues." See G.L. c. 260, § 2A.

2

In Mitchell v. City of Boston, 130 F.Supp.2d 201 (D.Mass. 2001), the plaintiff was convicted of forcible sexual intercourse in 1990 but later exonerated by DNA evidence in 1997. Mitchell, 130 F.Suup.2d at 204. Thereafter, the plaintiff brought suit against the City of Boston and two (2) officers alleging, among other things, that the defendants' actions violated his state civil rights under c. 12, § 11I. Id. In awarding the defendants summary judgment as to the plaintiff's count alleging a violation of c. 12, § 11I, the Court held that "[the plaintiff's] state civil rights claim is barred by the three year statute of limitations because plaintiff's criminal trial, conviction and incarceration put plaintiff on notice of the alleged wrongs for purposes of determining when the cause of action accrued." Id. at 214. According to the Court, "[the plaintiff's] MCRA claim accrued at the point he knew or should have known of the alleged conspiracy to falsely convict him, rather than upon the termination of criminal proceedings in his favor." See Id.

The only difference in the present case as compared to Mitchell is that Downer's hearing was an administrative hearing, not a criminal proceeding. The pendency of an agency proceeding does not suspend the running of the three (3) year statute of limitations. Votta v. Gnazzo, 57 Mass.App.Ct. 1114, 785 N.E.2d 427 (2003). The plaintiff in Mitchell was put on notice of the alleged wrongs as a result of his trial, conviction, and incarceration. In the present case, Downer was clearly put on notice of the alleged wrongs for purposes of determining when the cause of action accrued as a result of the disciplinary hearing and the demotion, which occurred on August 9, 2001.

The Complaint in this matter was filed with the Court on August 24, 2005. All of the acts of the Defendants identified in the Complaint are alleged to have occurred prior to August 24, 2002, i.e. the outer date that Plaintiff's August 24, 2005, Complaint can reach back to. Thus, to

3

the extent that Downer is relying on any untimely alleged events to support his claims, such

claims are barred by the statute of limitations. Downer did not file suit to preserve his rights

within the three (3) year limitations period and Count I of the Complaint alleging Defendants

violated G.L. c. 12, § 11I should therefore be dismissed.

C.   COUNT I SHOULD BE DISMISSED AS TO THE TOWN, MERCIER, AND
     HART IN THEIR OFFICIAL CAPACITIES AS THEY ARE NOT SUBJECT
     TO SUIT UNDER c. 12, § 11I

The Town is a duly constituted municipal organization organized under the laws of the

Commonwealth of Massachusetts. A municipality is not a "person" within the meaning of § 11I

and is therefore not subject to suit under that section. See Howcroft v. Peabody, 51

Mass.App.Ct. 573, 593 (2001). This is also true for individual defendants sued in their official

capacities. See Id. Thus, only Mercier, Hart, and Sawyer in their individual capacities are

subject to liability under Count I.

To make out a claim under the Massachusetts Civil Rights Act (hereinafter, "MCRA")

against Mercier, Hart, and Sawyer, Downer must show an interference or attempted interference

with the exercise or enjoyment of rights secured by the Constitution or laws of the United States,

or of Massachusetts, by means of "threats, intimidation, or coercion." Id. quoting Swanset Dev.

Corp. v. Taunton, 423 Mass. 390, 395 (1996). Plaintiff asserts that the right in question was his

right to free speech.

D.   PLAINTIFF HAS FAILED TO MAKE OUT A FIRST AMENDMENT CLAIM
     AGAINST MERCIER, HART, AND SAWYER IN THEIR INDIVIDUAL
     CAPACITIES

In order to make out a claim against Mercier, Hart, and Sawyer individually for

deprivation of his right to free speech, Downer must demonstrate that the speech at issue

involved "matters of public concern." Mullin v. Town of Fairhaven, 284 F.3d 31, 37-38 (1st Cir.

4

2002) quoting Connick v. Myers, 461 U.S. 138, 147-48 (1983). The inquiry into the protected status of speech is one of law, not fact. Connick, 461 U.S. at 148 n.7. As the United States Supreme Court has aptly stated, "[w]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Id. at 147. If Plaintiff meets this initial burden, the Court must then balance the strength of Plaintiff's and the public's First Amendment interests against the strength of the governmental interest in promoting efficient performance of the government agency involved. Mullin, 284 F.3d at 37-38. Assuming Plaintiff is able to meet that requirement, he must then demonstrate that his speech was a substantial or motivating factor for the alleged retaliation against him. See Id.

Downer's Complaint does state that Downer "spoke openly of his desire to be promoted…and of his hope to reach the rank of chief of police." Complaint, ¶ 10. In reviewing Downer's Complaint, it is clear that his comments relative to expressing interest in becoming Chief, even if not barred by the statute of limitations, did not rise to the level of speech by a citizen upon matters of public concern. See Pickering v. Board of Education, 361 U.S. 563 (1968) (Court held impermissible under the First Amendment the dismissal of a high school teacher for openly criticizing the Board of Education on its allocation of school funds between athletics and education); Perry v. Sindermann, 408 U.S. 593 (1972) (failure to rehire a teacher in the state college system who had testified before committees of the Texas legislature and had become involved in public disagreement over weather the college should be elevated to a four-year status—a change opposed by the Regents); Mt. Healthy City Board of Ed. v. Doyle, 429

U.S. 274 (1977) (a public school teacher was not rehired because, allegedly, he had relayed to a radio station the substance of a memorandum relating to teacher dress and appearance that the school principal had circulated to various teachers. The memorandum was apparently prompted by the view of some in the administration that there was a relationship between teacher appearance and public support for bond issues).

In Pickering, the subject was "a matter of legitimate public concern" upon which "free and open debate is vital to informed decision-making by the electorate." Pickering, 391 U.S. at 571-72. Here, the statements made by Downer involved nothing more than Downer expressing his personal interest in becoming Chief. It would be disingenuous in the extreme for Downer to now contend that his statements relative to his desire to become Chief were efforts on his part to bring attention to matters of public concern.

Notwithstanding all of this, even if one or more of Downer's statements referenced in the Complaint could be said to have involved protected speech, Downer can prove no set of facts to demonstrate that his speech was a substantial or motivating factor for the demotion on August 9, 2001. See Mullin, 284 F.3d at 37-38. To begin with, the Complaint states that Downer spoke often of his desire to become Chief. Downer worked together with Hart and Sawyer throughout his time on the police force. Mercier served as Town Administrator for the Town. Downer's Complaint, however, does not state that the Defendants ever heard Downer make these alleged remarks. Nor does the Complaint allege the number or frequency of these alleged statements made by Downer. As Downer has not even sufficiently alleged that the Defendants were aware of these comments he has alleged insufficient facts to establish that his speech was a substantial motivating factor for any actions on the part of the Defendants.

6

Although the legal standard for reviewing a motion under Rule 12(b)(6) remains constant, the First Circuit has previously required a heightened degree of specificity to withstand a motion to dismiss in certain classes of cases, including civil rights cases. See United States v. AVX Corporation, 962 F.2d 108, 115 (1st Cir. 1992) citing Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982) cert. denied, 461 U.S. 944 (1983). Specifically, the court stated that "[i]t is not enough to allege a general scenario which could be dominated by unpleaded facts nor merely to allege without specification that defendants used their powers generally with respect to various governmental bodies to plaintiff's prejudice…" Dewey, 694 F.2d at 3 (citations omitted). Downer's allegations relative to his speech concerning becoming Chief do not meet this heightened degree of specificity and Count I of the Complaint should therefore be dismissed.

E.   ANY CLAIMS UNDER 42 U.S.C. § 1983 AGAINST THE DEFENDANTS RELYING ON EVENTS OCCURRING PRIOR TO AUGUST 24, 2002, ARE BARRED BY THE STATUTE OF LIMITATIONS

The Supreme Court directs federal courts adjudicating civil rights claims under 42 U.S.C. § 1983 to borrow the statute of limitations applicable to personal injury actions under the law of the forum state. Wilson v. Garcia, 471 U.S. 261, 276-80 (1985). In Massachusetts:

> "Except as otherwise provided, actions of tort…to recover for personal injuries…shall be commenced only within three (3) years next after the cause of action accrues." See G.L. c. 260, § 2A.

The question of when a cause of action accrues is a matter of federal law. Rodriguez Narveaz v. Nazario, 895 F.2d 38, 41 (1st Cir. 1990). The accrual period for a § 1983 action begins when the plaintiff knows or has reason to know of the injury which is the basis of the action. Torres v. Superintendent of Police, 893 F.2d 404, 407 (1st Cir. 1990). A claim accrues

7

"when facts supportive of a civil rights action are or should be apparent to a reasonably prudent person similarly situated." See Corliss v. City of Fall River, 2005 WL 2861387 (D.Mass. 2005).

In the present case, viewing the facts in a light most favorable to Downer and without looking beyond the four corners of Downer's Complaint, his cause of action accrued, i.e. the statutory clock began to run, on August 9, 2001, the date on which he was demoted to patrolmen subsequent to a lengthy disciplinary hearing. It was on this date that Downer suffered injury based upon the Town's alleged prejudicial actions towards Downer, Sawyer's alleged false accusations, and Hart and Mercier's alleged discriminatory actions towards Downer prior to and during the disciplinary hearing. Complaint, ¶¶ 10,17, 28, 29, 30, 32, 35. To be timely, Downer's suit should have been filed on or before August 9, 2004. Unfortunately for Downer, the instant suit alleging violations of 42 U.S.C. § 1983 was not filed until August 24, 2005, more than one (1) year after the expiration of the three (3) year statute of limitations.

It cannot be said that Downer's cause of action accrued in May 2005 when the Town's disciplinary sanction was overturned by the Civil Service Commission. Judges confronting § 1983 actions "must consult federal law in order to fix the point in time from which the limitations period begins to accrue." Jonker v. Kelley, 268 F.Supp.2d 81, 85 (D.Mass. 2003); quoting Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994). In assessing the applicable date, the Supreme Court "takes a hard line on when civil rights claims for relief accrue. If there is more than one plausible alternative, the Supreme Court appears to be strongly inclined to pick the earlier date." Id.; Martin A. Schwartz & John E. Kirklin, 1C § 1983 *Litigation: Claims & Defenses,* § 12.14 at 13 (3d ed.1997). In the First Circuit, this means that "a § 1983 claim accrues at the moment the plaintiff knows, or has reason to know, of the injury that is the basis for the claim." Id.; Nieves v. McSweeney, 241 F.3d 46, 52 (1st Cir. 2001).

8

The decision at the Civil Service Commission did not trigger Downer's awareness of the injury. Relevant Federal and State precedent supports this rational position. See Campanella & Cardi Constr. Co. v. Commonwealth, 351 Mass. 184, 187 n. 4, 217 N.E.2d 925 (1966) (running of statute was not suspended by the possibility of an administrative settlement); Hemric v. Reed & Prince Mfg. Co., 739 F.2d 1, 3-4 (1st Cir.1984) (statute of limitations on negligence action not tolled during the pendency of workers' compensation proceedings); Ball v. Carroll, 932 F.Supp. 388, 390-391 (D.Mass.1996), affirmed, 107 F.3d 1 (1st Cir.1997) (statute of limitations in § 1983 action not tolled while claim was pending before executive officer); Burns v. Lamoine, 43 F.Supp.2d 63, 69 (D.Me.1999) (§ 1983 action accrued on the date that the owners received notice of permit revocation; the plaintiffs were not required to exhaust their State administrative remedies before bringing action).

Here, Downer was aware of the alleged actions of the Defendants during the internal investigation and the subsequent disciplinary hearing. Indeed, Downer accuses the Defendants of various misdeeds prior in time to the hearing that he alleges resulted in his disciplinary sanction. Complaint, ¶¶ 10, 21, 22, 23, 24, 25, 26, 28, 29, 30, 31, 32, 33, 34, 35, 36. These various misdeeds came to a head and resulted in Downer's demotion in August 2001. Downer's cause of action accrued at that time. At that time Downer was well aware of the alleged actions of all the Defendants, having participated in the investigation, attended the disciplinary hearing, and thereafter been disciplined in August 2001.

Not only is the length of the limitations period to be governed by state law, so too are closely related questions of tolling. Wilson v. Garcia, 471 U.S. 261, 269 (1985). Equitable tolling is applicable where the prospective plaintiff did not have and could not have had with due diligence, the information to bring suit in order to assert his legal rights. Wynn & Wynn, P.C. v.

Massachusetts Comm'n Against Discrimination, 431 Mass. 655, 673 (2000). According to the

Supreme Court:

> "Federal courts have typically extended equitable relief only
> sparingly. We have allowed equitable tolling in situations where
> the claimant has actively pursued his judicial remedies by filing a
> defective pleading during the statutory period, or where the
> complainant has been induced or tricked by his adversary's
> misconduct into allowing the filing deadline to pass. We have
> generally been much less forgiving in receiving late filings where
> the claimant failed to exercise due diligence in preserving his legal
> rights." Jonker, 268 F.Supp.2d at 85-86; quoting Irwin v. Dep't of
> Veterans Affairs, 498 U.S. 89, 96 (1990) (citations and footnote
> omitted).

It is the plaintiff's burden to prove that tolling is warranted. Rivera-Gomez v. de Castro,

900 F.2d 1, 3 (1st Cir.1990). As a threshold matter, Downer was possessed of the requisite

information to bring suit after his demotion in August 2001. Equitable tolling of the statute of

limitations is therefore not available to him. Notwithstanding the foregoing, Downer, in any

event, has not satisfied the burden of proving that tolling of the limitations period is warranted.

This case does not involve a "defective pleading" and the Complaint does not allege that the

Defendants tricked Downer into missing the deadline.

Neither can Downer's claim under 42 U.S.C. § 1983 survive on the theory that the

Defendants' actions amount to continuing torts against him. It is not disputed that the

Defendants participated in Downer's appeal of the disciplinary sanction to the Civil Service

Commission. Mercier, Hart, and Sawyer testified on behalf of the Town and were subject to

cross examination by Downer's attorney at the hearing. The Defendants' continued participation

at the Civil Service Commission cannot permit Downer from escaping the three (3) year

limitations period. In Massachusetts the 'continuing tort' theory is confined to instances of

nuisance and trespass. See John Beaudette, Inc. v. Sentry Ins. A Mut. Co., 94 F.Supp.2d 77, 107

(D.Mass. 1999); White Farm's Dairy, Inc. v. De Laval Separator Company, 433 F.2d 63, 67 (1st Cir. 1970). The reluctance of Massachusetts courts to extend the theory beyond nuisance and trespass actions "is based upon a strong judicial preference to adhere to the purposes and policies of the statute of limitations." Flotech, Inc. v. E.I. DuPont de Nemours Company, 627 F.Supp. 358, 363 (D.Mass. 1985); See Olsen v. Bell Telephone Laboratories, 388 Mass. 171 (1983); Wells v. New Haven & Northampton Co., 151 Mass. 46 (1890); Ahearn v. Warner, 16 Mass.App.Ct. 223 (1983).

For the foregoing reasons Count II of the Complaint should be dismissed.

F.       PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF UNDER §1983

In Count II of his Complaint, Downer asserts that he is entitled to relief under 42 U.S.C. §1983 for Defendants' retaliating against and attempts to terminate Downer's employment on account of his exercise of his First Amendment rights of free speech. Complaint, ¶ 63.

A claim under § 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law and second, the conduct must have worked a denial of rights secured by the Constitution or by federal law. Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997) cert. denied, 522 U.S. 819 (1997) citing Martinez v. Colon, 54 F.3d 980, 984 (1st Cir.) cert. denied, 516 U.S. 987 (1995). Under the second element, a plaintiff is required to prove not only a deprivation of a right, but also that the defendant's conduct was a cause in fact of the alleged deprivation. Id. at 1062 citing Maldonado Santiago v. Velazquez Garcia, 821 F.2d 822, 831 (1st Cir.1987). In an action pursuant to § 1983, there can be no municipal liability under a respondeat superior theory. Fabiano v. Hopkins, 352 F.3d 447, 452 (1st Cir. 2003) citing Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-95 (1978). Rather, to establish liability against a municipality, a plaintiff must prove deprivation of a constitutional

11

right by means of "the execution of the government's policy or custom." Id. citing City of

Canton v. Harris, 489 U.S. 378, 385 (1989). It is well-established that a suit brought against

municipal officials in their official capacities is tantamount to a claim against the municipality.

Canney v. City of Chelsea, 925 F.Supp. 58, 69 (D. Mass. 1996) citing Kentucky v. Graham, 473

U.S. 159, 166 (1985).

              1.      Plaintiff cannot recover for an "attempt" by the Defendants
                     to terminate him.

To the extent that Downer has asserted a § 1983 claim against Mercier, Hart, and Sawyer

for having "attempted to terminate" Downer's employment, such claim must fail as § 1983

requires that the conduct in question to have worked a denial of his rights. See Complaint, ¶ 63;

Soto v. Flores, 103 F.3d at 1061. Downer simply cannot recover for an "attempted" termination

under § 1983. Id.

              2.      Plaintiff has failed to identify any right depriving policy or
                     custom of the Town.

As for Plaintiff's §1983 claims against the Town and the individual defendants in their

official capacities, those claims also must fail as Plaintiff has not identified any policy or custom

of the Town which resulted in the purported deprivation of his rights. See Fabiano, 352 F.3d at

452. The Complaint is devoid of an allegation that addresses the policy or custom that deprived

him of a constitutional right. Again, the First Circuit requires a heightened degree of specificity

to withstand a motion to dismiss in civil rights cases. See United States v. AVX Corporation,

962 F.2d 108, 115 (1st Cir. 1992) citing Dewey v. University of New Hampshire, 694 F.2d 1, 3

(1st Cir. 1982) cert. denied, 461 U.S. 944 (1983). Specifically, the court stated that "[i]t is not

enough to allege a general scenario which could be dominated by unpleaded facts nor merely to

allege without specification that defendants used their powers generally with respect to various governmental bodies to plaintiff's prejudice..." Dewey, 694 F.2d at 3 (citations omitted).

Since in the instant matter Downer has failed to identify the policy or custom that was maintained by the Town that supposedly resulted in the alleged deprivation of his right to free speech, his §1983 claim against the Town and the individual defendants in their official capacities must be dismissed. See Fabiano, 352 F.3d at 452.

> 3. Downer has failed to make out a First Amendment Claim against Mercier, Hart, or Sawyer in their individual capacities

As for the free speech portion of Downer's § 1983 claim, dismissal of it is warranted for the same reasons detailed in Section D above. Again, in order to make out a claim against Mercier, Hart, and Sawyer individually for deprivation of his right to free speech, Downer must demonstrate that the speech at issue involved "matters of public concern." Mullin v. Town of Fairhaven, 284 F.3d 31, 37-38 (1st Cir. 2002) quoting Connick v. Myers, 461 U.S. 138, 147-48 (1983). Downer can prove no set of facts to demonstrate that his speech was a substantial or motivating factor for the alleged actions against him and any speech that was arguably protected was never actually interfered with or attempted to be interfered with by Mercier, Hart, or Sawyer.

## G. DOWNER HAS FAILED TO STATE A CLAIM FOR RELIEF FOR INTERFERENCE WITH A CONTRACT

In Count III, Downer alleges that the Town, Mercier, Hart, and Sawyer tortiously interfered with his contractual and/or advantageous business relationship with the Town. It is well settled that a party cannot be held liable for tortiously interfering with its own contract. Schinkel v. Maxi-Holding, Inc., 30 Mass.App.Ct. 41, 50 (1991); citing Gram v. Liberty Mutual

13

Insurance Co., 384 Mass. 659, 663, n.3 (1981); Riseman v. Orion Research, Inc., 394 Mass. 311, 314 (1985).

Presumably, therefore, Downer's Count III claim has been brought against Mercier, Hart, and Sawyer in their individual capacities because a claim against Mercier and Hart in their official capacities is the legal equivalent of a claim against the Town itself which is immune from liability for intentional torts committed by its employees, agents or representatives. M.G.L. c. 258, §10(c); see Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 284-85 (1985). To succeed on this claim, Downer must establish (1) the existence of a contract or business relationship which contemplated an economic benefit; (2) Defendants' knowledge of the contract or business relationship; (3) Defendants' intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages. Bourque v. Cape Southport Associates, LLC, 60 Mass.App.Ct. 271, 277-78 (2004) rev. denied, 441 Mass. 1105 (2004) citing Swanset Dev. Corp., 423 Mass. at 397.

A review of Downer's Complaint reveals that it is devoid of any *facts* to establish the following: (1) that he had a contract with the Town, (2) that if one did exist Mercier, Hart, or Sawyer had knowledge of it, (3) that either Mercier, Hart, or Sawyer intentionally interfered with that contract and/or any advantageous business relationship Downer may have had or (4) that he suffered damage due to a breach of the contract or discontinuation of the business relationship, as he must. See Buster v. George W. Moore, Inc., 438 Mass. 635, 652 (2003); Bourque, 60 Mass.App.Ct. at 277-78. Without any allegations to such effect, Downer's claim on this count must be dismissed. Id.

14

### H. DOWNER HAS FAILED TO STATE A CLAIM FOR RELIEF FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Under the Massachusetts Tort Claims Act ("Tort Claims Act"), a public employer constitutes "the commonwealth and any county, city, *town* . . . ." G.L. c.258, § 1 (emphasis added). A public employer is immune from liability for "any claim arising out of an *intentional tort*, including ... *intentional mental distress* ..." G.L. c.258, §10(c) (emphasis added). See Tilton v. Town of Franklin, 24 Mass. App. Ct. 110, 112 (1987) (the tort of intentional mental distress as provided for in the Tort Claims Act has been recognized to be the same tort as intentional infliction of emotional distress); see also Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 286 (1985) (claims against a public employer for intentional infliction of emotional distress were properly dismissed because public employers are immune from such suits). As such, the Downer's claim of intentional infliction of emotional distress against the Town cannot, as a matter of law, must be dismissed.

With regard to Mercier and Hart, as noted above, a claim against a Town official in his official capacity is merely another way of pleading a claim against the Town itself. See M.G.L. c. 258, §10(c); see Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 284-85 (1985). Therefore, since the Downer's are unable to maintain a claim of intentional infliction of emotional distress against the Town, they have failed to state a claim against Mercier or Hart in their official capacity.

The Massachusetts Workers' Compensation statute has been interpreted to provide an exclusive remedy for injuries compensable under G.L. c.152. Courts construing the exclusivity provision of the Workers' Compensation statute have interpreted it to cover intentional tort claims against individual employees, such as those claims raised in Count IV of the Complaint. See, e.g., Green v. Wyman-Gordon Company, 422 Mass. 551, 558 (1996); Foley v. Polaroid

Corp., 381 Mass., 545, 548-549 (1980); G.L. c. 152, §1(7A). As Downer is a public safety

employee, injuries sustained in the line of work are compensable under G.L .c 41, § 111F, not

G.L. c. 152. See G.L. c. 41, § 111F. Massachusetts Court, however, have consistently held that

like statutes should be construed in a similar fashion in order to ensure uniformity. "All the

statutes must be construed, where capable, so as to constitute a harmonious whole." Monahan v.

Town of Methuen, 408 Mass. 381 (1990). Therefore, as c. 41, § 111F is the equivalent of the

Workers' Compensation statute for public safety employees, it is Downer's exclusive remedy to

recover for injuries alleged to have been sustained in the performance of his duty. Count IV of

Downer's complaint is therefore barred pursuant to c. 41, § 111F.

## I.    DOWNER HAS FAILED TO STATE A CLAIM FOR RELIEF FOR DEFAMATION

As a threshold matter, the Downer's defamation claim against the Town must fail as the

tort of defamation is an intentional one (see Howard v. Town of Burlington, 399 Mass. 585, 586

n.5 (1987)) and a municipality is immune from liability for intentional torts committed by its

employees, agents or representatives. M.G.L. c. 258, §10(c); see Spring v. Geriatric Authority of

Holyoke, 394 Mass. 274, 284-85 (1985). With regard to Mercier and Hart, as noted above, a

claim against a Town official in his official capacity is merely another way of pleading a claim

against the Town itself. See M.G.L. c. 258, §10(c); see Spring v. Geriatric Authority of

Holyoke, 394 Mass. 274, 284-85 (1985). Therefore, since Downer is unable to maintain a claim

of defamation against the Town, he has failed to state a claim against Mercier or Hart in their

official capacity.

Turning to the Downer's defamation claim against Mercier, Hart, and Sawyer personally,

to succeed, the Downers must prove that the defendants published a false and defamatory

communication of and concerning them without any privilege to do so. McAvoy v. Shufrin, 401

16

Mass. 593, 597 (1988). It is not the individually named defendants' burden to prove the truth of the statements at issue, but rather it is the Downer's burden to demonstrate the falsity of the statement(s) under review. Id. "Defamation is the publication of material by one without a privilege to do so which ridicules or treats the plaintiff with contempt." Draghetti v. Chmielewski, 416 Mass. 808, 812 (1994). Whether the statement is reasonably susceptible of a defamatory meaning is a question of law for the Court. Foley v. Lowell Sun Pub. Co., 404 Mass. 9, 11 (1989). The test is whether, under the circumstances, the statement discredits Plaintiff in the minds of any considerable and respectable segment of the community. Draghetti, 416 Mass. at 811; Smith v. Suburban Restaurants, Inc., 374 Mass. 528, 529-30 (1978). This interpretation "requires that the court examine the statement in its totality in the context in which it was published." Id. quoting Myers v. Boston Magazine Co., 380 Mass. 336, 341-42 (1980). "The court must consider all the words used, not merely a particular phrase or sentence" and further "must consider the medium by which the statement [was] disseminated and the audience to which it [was] published." Myers, 380 Mass. at 341-42. It should be noted that matters of opinion are not actionable unless they are both derogatory and based on undisclosed facts. See Dulgarian v. Stone, 420 Mass. 843, 850 (1995); Myers, 380 Mass. at 339. An expression of opinion based on disclosed or assumed non-defamatory facts is not a viable basis for an action of defamation, no matter how unreasonable or derogatory it may be. See id.

Furthermore, even if the statement was defamatory, however, the Supreme Judicial Court has held that a public official is conditionally privileged to make otherwise defamatory statements while performing public duties, as long as the official does not act with malice. Mulgrew v. Taunton, 410 Mass. 631, 634-635 (1991). "The threat of defamation suits may deter public officials from complying with their official public duties when those duties include the

17

need to make statements on important public issues. The conditional privilege, therefore, is meant to allow public officials to speak freely on matters of public importance during the exercise of their official duties...unless there is unnecessary, unreasonable or excessive publication." Id. at 635.

With the exception of an alleged statement made by Sawyer in August 2001, the Downers have not identified any defamatory statements that were supposedly uttered by Mercier and/or Hart, or the persons to whom they allegedly made them. Any defamation claim against Sawyer for the alleged statement in August 2001, however, or any statements relied upon by Downer is bringing Count V which rely on alleged statements that occurred prior to August 24, 2002, for that matter, would be barred by the three (3) year statute of limitations referred to above. See G.L. c. 260, § 2A. Count V of the Complaint should therefore be dismissed as it alleges that Mercier and Sawyer defamed the Downer's as the Complaint does not sufficiently allege what statements, if any, were made by Mercier or Sawyer regarding the Downer's which could be construed as defamatory in nature.

As for the document generated by Hart, none of the statements contained in the writing is susceptible of a defamatory meaning. See Foley, 404 Mass. at 11. Hart was responding to a request of the Middlesex District Attorney's Office and consulted with Downer's attorney prior to transmitting the letter. See Exhibit "A," attached hereto.[2] Given the internal police department context in which the letter was transmitted, the statements are not of the type that

---

[2] The defendants submit that the incorporation of the letters to and from the Middlesex District Attorneys Office does not convert the instant motion to a motion for summary judgment. When the allegations of a complaint are expressly linked to a document, that document effectively merges into the pleadings and the trial court may review it in deciding a motion to dismiss under Rule 12(b)(6). See Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998); Chatman v. Gentle Dental Center of Waltham, 973 F.Supp. 228, 240 n.6 (D. Mass. 1997). Here, the complaint clearly references a communication from the Town to the District Attorney. Complaint, ¶ 50. Accordingly, the communication is effectively incorporated into the complaint, and its attachment to the within motion does not compel conversion to a motion for summary judgment pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1.

18

would hold Downer up to ridicule or treat him with contempt and thus, any defamation claim that relies on them should be dismissed. See Draghetti, 416 Mass. at 812.

Even if the document were to be deemed defamatory, Hart enjoyed a conditional privilege to submit the letter given the supervisory position he held over Downer as Chief of the Department and based upon his obligation to respond to the Middlesex County District Attorney. See Bratt v. International Business Machs. Corp., 392 Mass. 508, 509 (1984) (holding that an employer has a conditional privilege to disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job).

I.     DOWNER HAS FAILED TO STATE A CLAIM FOR RELIEF FOR CONSPIRACY

Massachusetts recognizes two types of civil conspiracy. There is precedent supporting a "very limited cause of action in Massachusetts" for "civil conspiracy" of a coercive type. See Jurgens v. Abraham, 616 F.Supp. 1381, 1386 (D.Mass.1985). In order to state a claim of [this type of] civil conspiracy, plaintiff must allege that defendants, acting in unison, had some peculiar power of coercion over plaintiff that they would not have had if they had been acting independently. Id.

The second type of civil conspiracy is more akin to a theory of common law joint liability in tort. For liability to attach on this basis there must be, first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement. Aetna Cas. Ins. Co.. v. P & B Autobody, 43 F.3d 1546, 1564 (1994). In the civil context, both elsewhere and in Massachusetts, the word conspiracy is frequently used to denote vicarious liability in tort for

19

"concerted action." Id. at 1565. Evidence of Mercier, Hart, and Sawyer's knowledge of its

substantial, supporting role in the unlawful enterprise is required.

As stated previously, to the extent that Downer's conspiracy claim relies on events that

occurred prior to August 24, 2002, those claims are barred by the applicable statute of

limitations. See G.L. c. 260, § 2A. It is self-evident that Downer's conspiracy theory is based

upon his demotion from sergeant to patrol officer in August 2001. Clearly, Downer is resting his

hat on the alleged actions of the defendants that resulted in his demotion, from Sawyer's false

allegations, to Hart's participation at the hearing and decisions on who and who not to

investigate, to Mercier's presiding at the disciplinary hearing, hearing all of the evidence, and

issuing the disciplinary demotion. Downer's conspiracy claim is therefore barred by the

applicable statute of limitations. Moreover, nowhere in the Complaint is there so much as a hint

as to what the Town, Mercier, Hart, or Sawyer did in connection with the alleged conspiracy.

Downer does not sufficiently allege that the Town, Mercier, Hart, and/or Sawyer were parties to

some common design or agreement to harm him. Count VI should therefore be dismissed in its

entirety.

J.      DOWNER'S WIFE CANNOT MAKE OUT A CLAIM FOR LOSS OF
        CONSORTIUM

As a general rule, a claim for loss of consortium requires proof of a tortious act that

caused the claimant's spouse personal injury. See Agis v. Howard Johnson Co., 371 Mass. 140,

355 N.E.2d 315 (1976); Diaz v. Eli Lilly & Co., 364 Mass. 153, 302 N.E.2d 555 (1973);

Mouradian v. General Eletric Co., 23 Mass.App.Ct. 538, 503 N.E.2d 1318 (1987); Sena v.

Commonwealth, 417 Mass. 250, 629 N.E.2d 986 (1994). The spouse of an alleged federal civil

rights victim is not permitted an ancillary cause of action for loss of consortium. Tauriac v.

Polaroid Corp., 716 F.Supp. 672 (1989). Also, the federal courts have rejected claims for loss of

consortium damages predicated on violations of Massachusetts civil rights statutes. Id.;
Mendoza v. B.L.H. Electronics, 403 Mass. 437, 530 N.E.2d 349 (1988). Mrs. Downer cannot
derive her loss of consortium claim from Downer's claims under the Massachusetts Civil Rights
Act or 42 U.S.C. § 1983.

This does not mean that Mrs. Downer's loss of consortium claim cannot survive. Indeed,
the Plaintiffs' Complaint sounds in several counts, four (4) of which are state common law
claims. See Edsall v. Assumption College, 367 F.Supp.2d 72 (D.Mass 2005). All of these
claims, however, are barred by the applicable statute of limitations or are allegations that fail to
state a claim upon which relief may be granted. Again, Downer's claim of interference with his
contract of employment fails to state a claim on which relief may be granted, Downer's claim
alleging intentional infliction of emotional distress is barred by G.L. c. 260, § 2A and c. 41, §
111F, and the Downer's defamation claim is barred by the three (3) year statute of limitations, as
is Count VI of the Complaint alleging conspiracy.

Again, as a general rule, a claim for loss of consortium requires proof of a tortious act
that caused the claimant's spouse personal injury. See Agis v. Howard Johnson Co., 371 Mass.
140, 355 N.E.2d 315 (1976) (citations omitted). As the Court lacks jurisdiction to hear the state
common law claims and as Downer's wife cannot derive a loss of consortium claim predicated
on violations of federal and state civil rights statutes, Mrs. Downer's claim alleging loss of
consortium must fail and be dismissed.

IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that all claims against them in
this matter be dismissed in their entirety.

21

DEFENDANTS,
TOWN OF BURLINGTON, ROBERT
MERCIER, FRANCIS HART, and HARRY
SAWYER,
By their attorneys,

David C. Jenkins (BBO# 251000)
Brian M. Maser (BBO# 655667)
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

Date:  November 28, 2005

266651/METG/0651

22







THE COMMONWEALTH OF MASSACHUSETTS
MIDDLESEX DISTRICT ATTORNEY
40 THORNDIKE STREET   CAMBRIDGE, MA 02141

MARTHA COAKLEY
DISTRICT ATTORNEY

Tel: 617-679-6500
Fax: 617-225-0871

September 25, 2002

Chief Francis Hart
Burlington Police Department
45 Center Street
Burlington, MA 01803

Re: Officer Robert Downer

Dear Chief Hart

We have recently learned that Officer Robert Downer was the subject of an internal investigation that resulted in his demotion from the rank of Sergeant. It is my understanding that the circumstances of the result of this investigation may be deemed exculpatory in nature in any case in which he is a witness or potential witness, thereby obligating our office to provide this information to defense counsel. Thus, please accept this letter as a request for information pertaining to the allegations and investigation into the conduct of Officer Downer.

Thank you for your prompt attention to this matter. If you have any questions or concerns, please feel free to contact me at 617-679-6510 or Deputy First Assistant District Attorney Lynn Rooney at 617-679-6512.

Cordially,

Martha Coakley
District Attorney



November 27, 2002



**Via fax and mail**

## BURLINGTON POLICE DEPARTMENT

Martha Coakley
Middlesex District Attorney
40 Thorndike Street
Cambridge, MA 02141

Re:   Middlesex County District Attorney's Request For Basis of Demotion of Burlington Police Officer Robert Downer

Dear District Attorney Coakley:

Attached is the letter responding to your request for information about the basis of the Town's decision to demote Patrol Officer Robert Downer. The Town was advised that it was obligated to provide the information because your office has an obligation to disclose it as exculpatory in nature in any criminal case in which Downer is a witness or a potential witness.

This response is a result of discussions between  Attorney Leo Peloquin (the Town), Attorney Brian Rogal (Officer Downer) and Assistant District Attorney Kerry Ahern of your office. It reflects the Town's intent to meet its obligation to respond to your request and, at the same time, address Officer Downer's contention that the Town should not provide any information because it is exempt from disclosure as part of Downer's personnel file.

Attorney Rogal has agreed that the Town can provide the attached letter.

Based on Assistant District Attorney Ahern's discussions with Attorney Peloquin today, I understand that the attached letter meets the Town's obligation to respond---for now. However, she indicated that she expected that the Town would be required to provide more information once the attached letter is provided to defense counsel in any criminal matter in which Downer is a witness or a potential witness. Please let me know if that occurs. The Town fully intends to meet any legal obligations that it has in this matter.

Thank you for your attention to this matter.

Chief Francis Hart
Burlington Police Department

45 Center Street
Burlington, MA 01803

Tel: (781) 270-1914
FAX: (781) 270-1920

cc:   Ms. Kerry Ahern, Assistant District Attorney (via fax)
Robert Mercier, Town Administrator (via fax)
Patrol Officer Robert Downer
Brian Rogal, Esq. (via fax)
Leo Peloquin, Esq.(via fax)



November 27, 2002

**Via fax and mail**

BURLINGTON
POLICE
DEPARTMENT

Martha Coakley
Middlesex County District Attorney
40 Thorndike St.
Cambridge, MA 02141

Dear District Attorney Coakley:

I am responding to your letter requesting information about the basis of the Town's decision to demote Patrol Officer Robert Downer.

The Town's Civil Service Appointing Authority (Town Administrator Robert Mercier) demoted him following a hearing to address charges against him. Mr. Mercier determined that several of the charges had been substantiated and that, by his conduct, he had violated the following Police Department rules and regulations:

1. **6.3 10 Failure or Refusal to Obey Orders-**

2. **6. 6.4 Professional Conduct and Responsibilities**

3. **6.4.2 Required Conduct**

4. **6.4.3 Prohibited Conduct**

Please note that Officer Downer appealed the Appointing Authority decision to the Civil Service Commission. This is a de novo hearing. Several days of the hearing have taken place at the Commission and three more are scheduled (December 10, 12, 17). Following completion of the hearing, it will likely be several months before a decision is issued.

Chief Francis Hart
Burlington Police Department

Cc: Ms. Kerry Ahern, Assistant District Attorney (via fax)
Robert Mercier, Town Administrator (via fax)
Patrol Officer Robert Downer
Brian Rogal, Esq. (for Officer Downer) (via fax)

45 Center Street
Burlington, MA 01803

Tel: (781) 270-1914
FAX: (781) 270-1920